WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

November 3, 2020

VIA ECF

The Honorable Alvin K. Hellerstein
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, NY 10007

***Brown, et al. v. National Bank of Pakistan***, No. 1:19-cv-11876-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

This letter responds to Plaintiffs' October 28, 2020 letter (ECF No. 25) advising this Court of the recent decision in *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 19-cv-5394 (BMC), 2020 U.S. Dist. LEXIS 194217 (E.D.N.Y. Oct. 20, 2020).  As explained below, *Henkin* confirms that the Court should dismiss Plaintiffs' Amended Complaint against NBP.  The Amended Complaint does not contain allegations of terrorist designations by governments that the E.D.N.Y. court found critical to its decision in *Henkin*.  And, consistent with Second Circuit precedent in *Linde* and *Siegel*, the Amended Complaint's allegations are insufficient to support a claim for aiding and abetting under JASTA.

Contrary to Plaintiffs' suggestion, the court in *Henkin* did not deny the motion to dismiss solely due to allegations that the defendant bank's diligence program supplied the requisite knowledge of the bank's involvement in terrorism financing.  Rather, the court's decision turned on the litany of factual allegations that both the U.S. and Israeli Governments *designated* or otherwise *identified* the defendant bank's three customers as terrorists or affiliates of terrorists and did so *prior to* the bank's alleged processing of transactions for those customers.  See *id.* at *7, 9, 11-12, 21-23, 33-34, 35-36.  No such allegations exist here against NBP.

The *Henkin* complaint alleges that, more than seven years before the 2015 attack at issue, the Israeli Government designated one customer (IHH) "as part of Hamas' fundraising apparatus and as an active member of the Union of Good.  Only a few months later . . . the U.S. Treasury Department designated the Union of Good as an SDGT, identifying that its primary purpose was to strengthen and support Hamas . . . ." *Id.* at *21-22.  Based on these allegations, the *Henkin* court concluded:  "It is therefore plausible that, *once the United States recognized* the Union of Good and its numerous 'affiliates' as Hamas fundraisers, [defendant bank]'s robust Anti-Terrorism and compliance department, having conducted due diligence of its clients from 2012-2015, *knew* that IHH was a conduit for Hamas." *Id.* at *22 (emphases added).

Similarly, the *Henkin* complaint alleges that another customer (IUG) "had been identified by the U.S. Department of Justice as an unindicted co-conspirator and part of Hamas' social infrastructure in a federal criminal case against Hamas fundraisers . . . ." *Id.* at *23.  And the third customer (Yaghmour) "was a notorious Hamas affiliate convicted of kidnapping and murdering an Israeli

WHITE & CASE

The Honorable Alvin K. Hellerstein
November 3, 2020

soldier." *Id.* at *24. The court concluded that, in light these allegations of *prior government actions* identifying the bank's customers as terrorists, "it is plausible that the bank was also aware of the litany of warning signs from which they would infer that illicit activity was afoot and that terrorist activities and violence were reasonably foreseeable." *Id.* at *23.

These allegations of prior government designations and identifications stand in stark contrast to the allegations regarding NBP's alleged customers. Hafiz Khan and Ghulam Murtaza have *never* been designated as terrorists. *See* Mem. (ECF No. 17) 26, 38; Reply (ECF No. 23) 25, 27-28, 35. And RWO was not designated by the United States until March 2016 — at least three years *after* the last alleged financial transaction with NBP. *See* Reply 26-27, 35.

Indeed, the *Henkin* court expressly distinguished the allegations before it from controlling precedent that is more analogous to the allegations against NBP. *Henkin*, U.S. Dist. LEXIS 194217, at *29-33 (discussing *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019)). The court observed that in *Siegel* (as here) the defendant bank's customer "had never been publicly identified as a terrorist organization or as a mere conduit for one by any government" before the attack. *Henkin*, 2020 U.S. Dist. LEXIS 194217, at *32. And, as in *Siegel*, NBP is alleged to have provided banking services to intermediaries, who in turn are alleged to have had links to financing organizations that were allegedly associated with designated terrorists. *See* Mem. 31-34, 43-45; Reply 32-33. For the same reasons that the defendant bank in *Siegel* had "'little reason to suspect that it was assuming a role in [al-Qaeda's] terrorist activities,'" NBP had little reason to be suspicious given that its customers had "never been publicly identified as [] terrorist affiliate[s], alter ego[s], or routine conduit[s] to al-Qaeda" prior to the attacks at issue. *Henkin*, 2020 U.S. Dist. LEXIS 194217, at *30-31 (quoting *Siegel*, 933 F.3d at 224).

As Plaintiffs' letter observes, *Henkin* rejected the defendant's argument "that plaintiffs are required to plead with specificity that the bank read or was actually aware of information connecting its customers to Hamas to survive a motion to dismiss." *Id.* at *24 (expressing skepticism about "supposed 'trend'" in case law). In fact, the other district court cases cited (*id.* at n.8) did not create some form of heightened pleading requirement. Rather they simply applied the pleading standard of *Twombly*/*Iqbal* and assessed whether complaints "plausibly allege" that bank defendants "were generally aware of any connection" between their customers and terrorists. *See Honickman v. BLOM Bank SAL*, 432 F. Supp. 3d 253, 265 (E.D.N.Y. 2020); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 535 (S.D.N.Y. 2019) (observing that none of the bank's customers were designated by the United States as having an affiliation with a terrorist organization and concluding that plaintiffs did not offer any non-conclusory allegations that defendant was aware that "in providing financial services, the bank 'was generally aware that it was thereby playing a role in [the terrorist organization's] violent or life-endangering activities,' which 'requires more than the provision of material support to a designated terrorist organization.'" (quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)); *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134, at *38-40 (S.D.N.Y. Mar. 28, 2019) (finding that designation of entities years after defendants transacted with them "undermin[ed] any inference that [d]efendants had reason to know about [their] connections with FTOs").

The Honorable Alvin K. Hellerstein
November 3, 2020

**WHITE & CASE**

Finally, consistent with the Second Circuit's interpretation of JASTA, even if Plaintiffs' allegations plausibly alleged — which they do not — that NBP knew its customers were related to designated terrorists, "[e]vidence that [NBP] knowingly provided banking services to [designated terrorists], without more, is insufficient to satisfy JASTA's scienter requirement." *Strauss v. Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019); *accord Linde*, 882 F.3d at 329; *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019). Rather, Plaintiffs must plausibly allege — which they have not — that NBP "was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities.'" *Siegel*, 933 F.3d at 224 (quoting *Linde*, 882 F.3d at 329); *id.* (contrasting "this with 'the *mens rea* required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities.'" (quoting *Linde*, 822 F.3d at 329-30)).

Respectfully submitted,

/s/ *Christopher M. Curran*

Christopher M. Curran
Claire A. DeLelle
Matthew S. Leddicotte

*Counsel for National Bank of Pakistan*

cc:   Counsel of Record (via ECF)