UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
HAROLD BROWN SR. et al.,

                      Plaintiffs,

  -against-

NATIONAL BANK OF PAKISTAN,

                      Defendant.
------------------------------------------------------------- x

**ORDER GRANTING THE MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

19 Civ. 11876 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        This is a lawsuit against the National Bank of Pakistan for financing, and thus aiding and abetting, international terrorism.  Six Americans who were seriously injured by terrorists in Afghanistan, and close family members of two hundred and seventy-seven Americans who were injured or killed and who also claim injury to their persons, filed this lawsuit under the Anti-Terrorism Act ("ATA"), as amended in 2016 by the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d)(2).  Defendant moves to dismiss Plaintiffs Third Amended Complaint ("TAC"), ECF No. 69.  I grant the motion, with leave to file a Fourth Amended Complaint.[1]

    *Capacity to Sue Under the ATA and JASTA*

        Plaintiffs include 6 U.S. nationals injured in acts of international terrorism; 263 family members of U.S. nationals killed in acts of international terrorism; and 4 family members of U.S. nationals injured in acts of international terrorism.  The question is whether each plaintiff has capacity to sue under the ATA and JASTA.

---

[1] This order records my reasoning, rulings, and questions for later consideration, as expressed in the transcript of argument, April 5, 2022.

1

> Section 2333(a) of the ATA provides:
>
> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a). JASTA amended the ATA to extend liability to actors who, directly or indirectly, aid and abet such acts by knowingly providing substantial assistance. § 2333(d)(2); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 855 (2d Cir. 2021) (holding that a defendant can be liable under JASTA for providing indirect aid to FTOs through intermediaries that are closely intertwined with those organizations).

The six plaintiffs here who were injured in acts of international terrorism plainly have capacity to sue under JASTA. So too do the 263 plaintiffs who "allege a familial relationship, such as that of a child, parent, spouse, or sibling of a U.S. national" killed in an act of international terrorism. *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006). Although some of these plaintiffs assert claims based on the same deceased U.S. national, courts have routinely allowed more than one family member, survivor, or heir to bring a separate claim because doing so accords with Congress's intent that the ATA and JASTA be interpreted broadly. *See, e.g.*, *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, S.A.*, 495 F. Supp. 3d 144, 152 (E.D.N.Y. 2020) (rejecting argument that only one representative of a deceased U.S. national is necessary or allowed under the ATA); *Knox v. The Palestine Liberation Org.*, 248 F.R.D. 420, 423 (S.D.N.Y. 2008); *Weiss*, 453 F. Supp. 2d at 620. Moreover, plaintiffs may recover for pecuniary as well as non-economic damages. *See Estate of Henkin*, 495 F. Supp. 3d at 152 (quoting *Lelchook v. Commerzbank AG*, No. 10-cv-5795, 2011 U.S. Dist. LEXIS 106305, at *2 (S.D.N.Y. Aug. 2, 2011)) (noting that "[c]ourts permit '[p]laintiffs to pursue claims for solatium [emotional] damages' under the ATA"); *see also Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006) (quoting *Smith ex rel.*

2

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234 (S.D.N.Y. 2003)) ("Spouses and relative[s] in direct lineal relationships are presumed to suffer damages for mental anguish.").

As to the remaining four plaintiffs, whose family members were injured but not killed in acts of international terrorism, I find that they lack capacity to sue. "[U]nder the ATA, someone who survived the attack . . . has no survivors or heirs that can recover for his injuries on his behalf." *Estate of Henkin*, 495 F. Supp. 3d at 152. The four plaintiffs who allege a familial relationship with U.S. nationals that only were injured are thus neither survivors nor heirs and cannot state a claim for relief under JASTA. Accordingly, the motion to dismiss is granted as to those plaintiffs.[2]

**Personal Jurisdiction**

Although I previously held that I have personal jurisdiction over Defendant, *see* ECF No. 34, the instant motion renews Defendant's challenge to personal jurisdiction. In light of the superseding amended complaints, I entertain Defendant's arguments and hold that limited jurisdictional discovery may be necessary to ascertain whether personal jurisdiction exists.

Federal courts must satisfy three requirements in order to exercise personal jurisdiction over an entity: (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012).

The statutory basis for exercising personal jurisdiction comes from the statutes of the forum-state in which a federal court sits—here, N.Y. C.P.L.R. §§ 301, 302. Under Section

---

[2] The four plaintiffs are Diane Timoney and Gregory Timoney (mother and father of Ryan Gregory Timoney), Hamide Lau (wife of David William Haalilio Lau), Ariell S. Taylor (widow of now-deceased Christopher L. Brown who was injured in an attack).

3

301, a court may exercise general jurisdiction over a defendant on all causes of action where the defendant's ties to New York are so continuous and systematic as to render them essentially at home in the jurisdiction.[3]  Under Section 302, a court may exercise long-arm jurisdiction over nondomiciliaries that transact business in New York, contract to supply goods or services in New York, or commit a tortious act within the state.  N.Y. C.P.L.R § 302(a)(1), (2).  Section 302 also authorizes jurisdiction based on tortious acts committed outside the state, if the defendant engages in a course of conduct in New York or derives substantial revenue from goods used or consumed or services rendered in New York, § 302 (a)(3)(i), or if a defendant expects, or should reasonably expect, the tortious act to have consequences in the state and derives substantial revenue from interstate or international commerce.  § 302(a)(3)(ii).

New York courts have held that fund transfers through a defendant-bank's New York branch are sufficient to establish personal jurisdiction where the transfers indicate a course of dealing.  For example, in *Indosuez Int'l Finance B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 247 (2002), the New York Court of Appeals found that six New York-based banking transfers over two years was sufficient to plead a course of dealing and support personal jurisdiction.

Under the Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"  *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).  A federal court may only exercise specific jurisdiction over a defendant if the defendant has certain

---

[3] The parties do not dispute that Defendant is not at home in New York, and therefore, not subject to general jurisdiction.

minimum contacts with the forum, such that by "some act [he] purposefully avails [himself] of the privilege of conducting activities within the forum State." *Id.* at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The contacts must be deliberate, such as "'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  Further, the plaintiff's claims "must arise out of or relate to the defendant's contact" with the forum. *Id.* (citing *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)).

Plaintiffs have not established a prima facie claim of personal jurisdiction.  The TAC offers only generalized allegations and speculations that some funds were transferred through the New York branch based on an assumption that transactions from one currency to another are dollar transactions passing through Federal Reserve Banks in New York.  *See, e.g.*, TAC ¶ 10 ("NBP's U.S. presence was both central and essential to NBP's role in financing terrorism, as the New York branch facilitated donations from around the world to terrorists in Pakistan . . . ."); ¶ 36 ("[M]any donations likely had at least some contact with the U.S. banking system. . . . international wires would likely have involved the use of New York banks.  If donations were made in a currency other than the account currency, those currency conversions also would likely have used the U.S. dollar as an intermediary currency."); ¶¶ 69 ("[D]onations . . . made in local currencies, like Saudi Riyals, and would have been exchanged into U.S. dollars and then converted into Pakistani Rupees. . . . NBP's internal documents make clear [that] all U.S. dollar transactions touch on NBP's NY branch.").  Plaintiffs have not identified any specific transfers through Defendant's New York branch.

The TAC's generalized allegations are insufficient to satisfy either New York's long-arm statute or the Due Process Clause.  The allegations do not allege plausibly a course of

5

dealing, or that Defendant has purposefully availed itself of the forum by engaging in a frequent and deliberate use of its New York branch. When determining whether the use of a bank branch constitutes purposeful availment, courts typically consider the number of transfers identified and volume of money transferred, as well as whether plaintiffs allege the dates of the transfers. *See Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19-cv-007, 2020 U.S. Dist. LEXIS 229921, at *5 (E.D.N.Y. Nov. 25, 2020) (finding that account numbers and the allegation that defendants transferred "millions of dollars on Hezbollah's behalf through these accounts" were somewhat general allegations, but the identification of numerous specific transactions and the volume, both in number and dollar value, of these transactions, were sufficient to demonstrate purposeful availment of New York banks). As indicated above, Plaintiffs have not identified any transfers passing through the New York branch, let alone the "key supporting facts such as number of transfers, dates, and monetary amounts, which other courts have relied upon to find a prima facie showing of personal jurisdiction . . . ." *Singer v. Bank of Palestine*, No. 19-cv-06, 2021 U.S. Dist. LEXIS 177860, at *62 (E.D.N.Y. Apr. 30, 2021). That said, Plaintiffs have pleaded some facts suggesting that personal jurisdiction might exist, and limited jurisdictional discovery would afford Plaintiffs an opportunity to identify those currently missing "key supporting facts." Such discovery will be a topic for discussion at the first status conference.

### *Failure to State a Claim for Relief*

A claim under Section 2333(d)(2) requires: (1) an injury arising from an act of international terrorism; (2) that the act was committed, planned, or authorized by a designated Foreign Terrorist Organization; and (3) that defendants aided or abetted an act of international terrorism by knowingly providing substantial assistance. See *Kaplan*, 999 F.3d at 854–55. As to what a plaintiff must prove to establish a claim for aiding-and-abetting, Congress stated that the D.C. Circuit's decision in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), provides the

6

proper framework for analyzing such claims. *See Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 164 (2d Cir. 2021). As set forth in *Halberstam*, an aiding-and-abetting claim has three elements—wrongful acts, general awareness, and substantial assistance. *See id.* at 487–88. As my prior Order made clear, the central issue is whether Defendant had "general awareness that the money it was transferring, or the financial services it was providing, would support terrorism." *See* Order, ECF No. 64.

Plaintiffs allege that Defendant aided and abetted terrorist activity by providing banking services to three customers—Hafiz Khan, Al-Ramah Welfare Organisation ("RWO"), and Gulam Murtaza. For reasons stated on the record at the April 5, 2022 oral argument, I hold that Defendant had general awareness as to its customers' terrorist ties as follows. As to Hafiz Khan, Defendant was generally aware starting in May 2011, when Khan was indicted by a United States federal grand jury for providing and conspiring to provide material support to terrorists. *Id.* ¶ 87. As to RWO, Defendant was generally aware starting in March 21, 2016, when the Treasury Department designated RWO and RWO's president, CEO, and chairman, Alexander McLintock, as Specially Designated Global Terrorists ("SDGTs"). TAC ¶¶ 47, 47 n.16. Finally, as to Murtaza, Defendant was generally aware starting in November 2011, when the Jamestown Foundation published a report, stating that Al-Rehmat Trust ("ART") "openly carries out fund raising activities using legitimate banking channels" and noting Murtaza's personal connection to ART. *Id.* ¶ 67.

Under the standard set forth in *Honickman v. BLOM Bank Sal*, in order to sustain a claim under JASTA, Plaintiffs must "plausibly allege . . . as a threshold requirement, that Defendant was aware of its customers' connections with [the relevant FTO] *before* the relevant attacks . . . ." 6 F.4th 487, 501 (2d Cir. 2021) (emphasis added). Accordingly, instances of transactions facilitated by Defendant, and cited by Plaintiffs, that predate the above-noted dates

7

of general awareness cannot satisfy *Honickman*'s standard. Therefore, such plaintiffs cannot state a claim under JASTA and should be dropped and the caption amended accordingly.

Plaintiffs shall file a Fourth Amended Complaint within thirty days to conform with my rulings. They also shall reattach the previously omitted appendix, listing the relationships of the plaintiffs to the U.S. nationals allegedly injured or killed in the various acts of international terrorism.

The Clerk of Court shall terminate ECF No. 69.

SO ORDERED.

Dated: April 19, 2022         /s/ Alvin K. Hellerstein
       New York, New York     ALVIN K. HELLERSTEIN
                              United States District Judge